UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

IN RE:

SUSAN MARIA RABORN                                              CASE NO. 15-10938
    DEBTOR                                                          CHAPTER 7

MARTIN SCHOTT, TRUSTEE
    PLAINTIFF

V.                                                                           ADV. NO. 16-01044

CHARLES RABORN
    DEFENDANT

## MEMORANDUM OPINION

Chapter 7 trustee Martin A. Schott sued[1] Dr. Charles P. Raborn to avoid as a fraudulent conveyance under 11 U.S.C. §548 the prepetition rescission of a transfer of stock resulting from a state court judgment.[2] The trustee seeks approval[3] under Fed. R. Bankr. P. 9019(a) of a compromise of that lawsuit as well as other claims between the estate and several other persons and entities.[4] The compromise serves the best interests of the creditors and the estate and is approved.[5] The court has considered and overrules all the debtor's objections.[6]

---

[1] P-1 in adversary no. 16-1044.

[2] The state court's judgment dissolved Charles Raborn's September 2006 sale to the debtor of 245 shares of stock in Pedicons, Inc. ("Pedicons") and revested ownership in Dr. Raborn, who had sold it to the debtor.

[3] P-705.

[4] The settling parties include Charles Raborn; the debtor's sisters, Betsy Muller and Karen Rogers; brother-in-law, James Muller; Pedicons; and the KidMed pediatric clinics that members of the Raborn family own and operate (collectively, the "Settling Parties").

[5] This memorandum opinion constitutes the court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, made applicable by Federal Rules of Bankruptcy Procedure 9014 and 7052. The court has considered the parties' filings, the record of both the adversary proceeding and the main case, the evidence and the argument of counsel and the debtor.

**The Proposed Compromise**

The compromise will bring the estate $405,000 and terminate pending litigation in federal and state courts.[7] The agreement also releases the estate's claims against the Settling Parties and several other persons and entities.

During a day-long evidentiary hearing on the trustee's motion, the court heard testimony from Betsy Muller, debtor's sister and president and treasurer of Pedicons; Jason MacMorran, a certified public accountant and certified valuation analyst; and Vanessa Claiborne, a certified public accountant and accredited senior appraiser. The debtor also testified and examined the trustee.

The trustee as the moving party bore the burden of proof.[8]

## I.  FACTS

A short account of pre-bankruptcy state court litigation between the debtor and her father, Charles Raborn, is helpful in evaluating the trustee's settlement proposal and the debtor's prolix objection.

Dr. Charles Raborn, a physician, established the KidMed Clinics to provide pediatric medical services to economically disadvantaged families. Each clinic initially had its own

---

[6] At the outset of the March 10 hearing, the court approved the trustee's reservation of the debtor's claim that escrowed Pedicons dividends are Ms. Raborn's exempt property. This memorandum opinion therefore does not address ownership or disposition of the dividends.

[7] The litigation to be dismissed includes several lawsuits in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana: *Susan Maria Raborn v. Charles P. Raborn, et al.*, No. 617,405; *Charles P. Raborn v. Susan Maria Raborn*, No. 624,303; *Susan Raborn v. Pedicons, Inc.*, No. 632,301; *Susan M. Raborn o/b/o Kid Med, et al. v. Pedicons, Inc.*, No. 633,889. It also would result in dismissal of several adversary proceedings in this court, specifically: *Susan Maria Raborn, Plaintiff v. James G. Muller, Betsy Muller, Karen Rogers and Pedicons, Inc.* (*In re Susan Maria Raborn),* Adv. No. 15-1073; *Susan Maria Raborn v. Kid Med North/H2R2, Inc., Kid Med South, Inc., Kid Med East, LLC, Karen Rogers, Betsy Muller, and James Muller*, Adv. No. 15-1085; and *Martin A. Schott v. Charles P. Raborn*, Adv. No. 16-1044. [P-705, ¶12].

[8] *In re Lawrence & Erausquin, Inc.,* 124 B.R. 37, 38 (Bankr. N. D. Ohio 1990) ("The Trustee, as proponent of the proposed settlement, has the burden of persuasion that the settlement is in the best interest of the estate"); *In re Roqumore*, 393 B.R. 474, 480 (Bankr. S. D. Tex. 2008) ("The Trustee bears the burden of establishing that the ... compromise is fair, equitable and in the best interest of the estate.")

Medicaid provider number under which it billed and received reimbursements for services. Betsy Muller testified that in 2005 Dr. Raborn terminated the individual provider numbers for the clinics and consolidated all of the Medicaid and insurance billing through the Pedicons provider number. All of Pedicons income now derives from managing the KidMed pediatric clinics.

Dr. Raborn sold the debtor the Pedicons stock in 2006 but in 2013, sued her in a Louisiana state court to dissolve the stock sale when she failed to pay the purchase price.[9] After a jury trial and a unanimous jury verdict,[10] the state court rendered judgment dissolving the stock sale and recognizing Charles Raborn as the stock's owner.[11] The judgment also provided that Charles Raborn waived his right of restoration of fruits and dividends that the stock generated before the date of the judgment. In parallel fashion, the judgment also recited the parties' stipulation that the debtor waived her rights to restoration, including reimbursements from Charles Raborn for taxes she'd previously paid and for reimbursements for amounts she'd previously paid on the promissory note for the purchase price.[12] The debtor moved for a new trial and for judgment notwithstanding the verdict but filed chapter 11 before the state court ruled on those motions. This court later granted Charles Raborn relief from the automatic stay[13] to

---

[9] *Charles P. Raborn v. Susan Maria Raborn*, No. 624,303, Nineteenth Judicial District Court, Parish of East Baton Rouge, State of Louisiana.

[10] P-82, ¶3.

[11] *Id.*, Exhibit A.

[12] Adv. No. 15-1073, P-19.

[13] P-82.

allow the litigants to obtain rulings on the pending motions and proceed to a final, non-appealable judgment determining the debtor's rights in the Pedicons stock.[14]

Rather than concluding the state court proceedings, time and again Ms. Raborn unsuccessfully has sought to relitigate in the bankruptcy court issues she raised—or could have raised—in the state court prior to its judgment.[15]

Despite the grant of stay relief, no party sought to provoke a hearing in the state court on the debtor's pending motions before this court converted the chapter 11 case to a chapter 7 liquidation nearly one year later.[16] The United States Trustee appointed Martin Schott as interim trustee in the chapter 7 case, and he later qualified as the permanent trustee. Schott now stands in the debtor's shoes in the state court litigation. 11 U.S.C. §323.[17]

Not long after his appointment, the trustee sued Charles Raborn in this court to recover the stock lost in the state court judgment pursuant to 11 U.S.C. §548.

During the evidentiary hearing on the trustee's motion to compromise, the trustee testified that the estate has insufficient assets to pay creditors' claims in full. The case record confirms his assertion.

### A. The Debtor's Objection

---

[14] P-186. The debtor adamantly opposed stay relief and unsuccessfully appealed the grant of relief. She also failed to secure stays pending appeal in both this court and the district court.

[15] *E.g.*, *Response to Motion for Protective Order Filed by Charles Raborn* (P-134) and *Ex Parte Motion for Order to Allow Visits with Elderly Dying Father or Allow Stay Lifted in Part to Request Same in State Court* (P-268) in Case No. 15-10938; *Motion for Turnover of Dividends* in Adv. No. 15-1073; and *Complaint to Enjoin* KidMed clinics from transferring assets to Pedicons in Adv. No. 15-1085.

[16] August 31, 2016 Order Converting Case from Chapter 11 to Chapter 7 [P-609].

[17] Debtor's opposition and argument complained of the trustee's failure formally to substitute himself in her place in the state court. That procedural step is inconsequential here: the trustee controls the lawsuit for the benefit of the estate and its creditors whether or not he has formally substituted for the debtor in the prepetition forum.

4

The debtor alone, a lawyer appearing *pro se*, opposed the proposed settlement.[18] Her extensive Post Hearing Brief,[19] as so many of her filings in this court, urges many reasons for not approving the compromise, including some she has raised previously in this court or in state court litigation. Her sweeping objection among other things challenged the court's subject matter jurisdiction over the trustee's fraudulent conveyance claim;[20] it also assailed the trustee's employment of his testifying expert.[21] The debtor's other principal objections to the settlement were:

1. The trustee proposes to use the debtor's exempt[22] property to settle.[23]

2. Charles Raborn lacks capacity and is unable to settle with the trustee.[24]

3. The amount the estate will receive on account of the Pedicons stock is inadequate because it does not include the value of the KidMed clinics that Pedicons runs.

4. Ms. Raborn's sisters' and brother-in-law's administrative expense claims are invalid.[25]

5. The Pedicons articles of incorporation prohibit the seizure or transfer of the estate's Pedicons stock.

---

[18] P-721.

[19] P-747.

[20] P-721, p.7, ¶1.

[21] P-721, pp.10–11, ¶1.

[22] *See* note 6.

[23] P-721, p.4, ¶1.

[24] P-721, p.19, ¶4.

[25] P-721, p.17, ¶1.

6. The proposed receipt and release cannot be approved because only parties to the adversary proceeding may be released in the settlement.

7. The debtor objects to the estate's relinquishing any claim to the house in which she resides.[26]

These objections all are addressed more fully in this opinion.

Not content with objecting, the debtor countered with her own offer for the Pedicons stock and dismissal of litigation. Her proposal also demands that her parents dismiss a state court lawsuit in which they obtained a restraining order against her.[27]

## II. ANALYSIS

### A. The Debtor Lacks Standing to Oppose the Settlement

The debtor's standing to object to the compromise is an issue that precedes analysis of the debtor's objections.

The debtor bore the burden of proving her standing[28] by establishing that she has a pecuniary interest in the settlement:

> [A] chapter 7 debtor does not ordinarily have standing to appeal the settlement of a claim against the estate… To have standing to appeal a bankruptcy order, a debtor must show that he was directly or adversely affected pecuniarily by the order, or that the order diminished his property, increased his burdens, or impaired his rights… [If] the debtor can show that a successful appeal will generate assets in excess of liabilities, thus entitling him to a distribution of surplus under 11 U.S.C. §726(a)(6), then the debtor is a "person aggrieved" with standing to appeal.[29]

---

[26] P-721, p.18, ¶1.

[27] *Charles P. Raborn and Adrienne A. Raborn v. Susan Maria Raborn*, No. 614,735, Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana; *vacated in part and affirmed in part*, *Charles P. Raborn and Adrienne A. Raborn v. Susan Maria Raborn*, 2014 WL 5878933 (La. App. 1st Cir. Nov. 13, 2014); *writ denied, Charles P. Raborn and Adrienne A. Raborn v. Susan Maria Raborn*, 163 So.3d 793 (Mem) (La. 2015).

[28] *Matter of Haggerty*, 542 B.R. 849, 852 (Bankr. N.D. Ind. 2015) ("The debtor had the burden of proving his standing to object."); *In re Morreale*, 2015 WL 3897796 *7 (Bankr. D. Colo. 2015) ("The party asserting standing bears the burden of proving standing.")

[29] *In re Solomon*, 129 F.3d 608, n.10 (5th Cir. 1997) (unpublished). *See also Cult Awareness Network, Inc. v. Martino (In re Cult Awareness Network, Inc.),* 151 F.3d 605, 607 (7th Cir.1998) ("To have standing to object to a

6

The evidence and record of the main case support a finding that Susan Raborn lacks standing to oppose the settlement because her estate is insolvent.

Proofs of claim totaling $528,127.86 were filed before the bar date and the debtor's schedules reflect nonexempt assets of minimal value available for paying those claims. The trustee also argued in closing that the settlement proceeds will be the only significant asset available to pay claims and costs of administering the case.

The evidence established that the 245 shares of Pedicons stock were worth between $266,228.00 (the value determined by the trustee's expert witness) and $147,000.00 (the value determined by the Settling Parties' expert witness).

The debtor objected to the parties' assigning a value of $207,000 to the stock for settlement purposes but offered no evidence to suggest that it was worth more than any values assigned by either side's expert.[30]

The evidence and case record establish that the prepetition claims against the estate far exceed the assets available to pay those claims. Without the settlement, the debtor's estate has few assets worthy of administration, unless the debtor prevails on her claim of owning the house.[31] The trustee testified that even with the $405,000 from the settlement, there was not enough money in the estate to pay all filed claims.

---

bankruptcy court order, a person must have a pecuniary interest in the outcome of the bankruptcy proceedings. Only those persons affected pecuniarily by a bankruptcy court order have standing to appeal that order.")

[30] *See* Part IV, "Uncontradicted Expert Testimony Established the Value of the Pedicons Stock", p. 12, *infra.*

[31] Debtor has insisted repeatedly that she actually owns the house in which she resides, contrary to the public record, which reflects that the property belongs to the Charles Raborn and Adrienne Raborn Revocable Living Trust (Exhibit Muller-3). As significant as that asset should be to this debtor, she never moved to establish her ownership of the house either during chapter 11 or since conversion to chapter 7. Additionally, should the debtor have established that the house was an asset of the estate, the trustee testified that because it was worth more than the mortgage debt it secured, he would sell the home and use the sales proceeds (net of any homestead exemption to which the debtor may be entitled) to pay creditors' claims. The court does not address the debtor's entitlement to a Louisiana homestead exemption under La. R.S. 20:1.

The evidence established that Susan Raborn will not receive anything from the estate. 11 U.S.C. §726(a)(6); *see Solomon,* below. Thus she lacks standing to object to the settlement.[32]

### B. The Settlement is in the Best Interest of the Estate and Creditors

The chapter 7 debtor's standing aside, the court still must determine whether the proposed settlement is in the best interest of the estate and creditors. Bankruptcy courts may approve a compromise or settlement "only when the settlement is fair and equitable and in the best interest of the estate."[33] The Fifth Circuit explained how courts can determine whether a settlement is "fair and equitable":

> [W]e apply the three-part test set out in *Jackson Brewing* with a focus on comparing "the terms of the compromise with the likely rewards of litigation." A bankruptcy court must evaluate: (1) the probability of success in litigating the claim subject to settlement, with due consideration for the uncertainty in fact and law; (2) the complexity and likely duration of litigation and any attendant expense, inconvenience, and delay; and (3) all other factors bearing on the wisdom of the compromise. These "other" factors—the so-called *Foster Mortgage* factors—include: (i) "the best interests of the creditors, 'with proper deference to their reasonable views'"; and (ii) "the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion."[34]

Though it is "unnecessary to conduct a mini-trial to determine the probable outcome of any claims waived in the settlement,"[35] the court held an evidentiary hearing March 10, 2017, to consider the proposed compromise. The factors the Fifth Circuit applies to compromise evaluation support the parties' agreement.

First, the trustee has sued in this court to set aside a state court judgment dissolving Charles Raborn's sale of Pedicons stock to the debtor. The lawsuit has not progressed beyond

---

[32] *See* note 6.

[33] *In re Foster Mortg. Corp.,* 68 F.3d 914, 917 (5th Cir.1995).

[34] *In re Age Ref., Inc.*, 801 F.3d 530, 540 (5th Cir. 2015) (citing *In re Jackson Brewing Co.,* 624 F.2d 599, 602 (5th Cir.1980) (internal quotation marks omitted) and *In re Cajun Elec. Power Coop., Inc.,* 119 F.3d 349, 356 (5th Cir.1997) (quoting *In re Foster Mortg. Corp.,* 68 F.3d 914, 917-18 (5th Cir. 1995)).

[35] *Cajun Elec.*, 119 F.3d. at 357.

8

initial pleadings so the court has not ruled on the validity of the trustee's claims. Regardless, the Settling Parties represent that they will litigate the trustee's complaint vigorously should the court not approve the proposed settlement. Discounting the possibility that the trustee will not prevail would be unwise but even pursuing the claim to a final, non-appealable judgment in the trustee's favor would take significant time and consume resources. The estate lacks any resources to pay the trustee to litigate the adversary proceeding.

Second, victory for the trustee in his fraudulent transfer lawsuit would yield little more than the settlement amount. The estate would at best obtain a judgment for the stock or for the amount the most optimistic expert valuation assigned to it: $270,000, not considering attorney fees and costs.[36] Conversely, the trustee's loss would leave the estate liable for substantial attorney fees and costs for prosecuting the avoiding action, plus possibly require him to continue to prosecute an appeal of the unfavorable state court judgment that also is being compromised. Neither outcome is inviting given the estate's lack of resources to fund litigation.

The debtor complains about fraud and collusion among parties but not a scintilla of evidence supported her contentions. Betsy Muller testified that the negotiations leading to the settlement were at arm's length. Her testimony was credible and not contradicted. Moreover, no creditor objected to the compromise.

---

[36] 11 U.S.C. §550(a). Too, a judgment recovering the stock for the estate would leave the trustee holding a minority interest in a closely-held corporation, for which no ready market exists, according to the testimony of both experts.

9

### C.  Debtor's Objections

All the objections in the debtor's catalog[37] fail because even assuming *arguendo* that the debtor had standing to oppose the compromise, her objections either lack a legal basis or if based in law, lack evidentiary support.

### I.     *Rooker Feldman* Does Not Preclude the Settlement

The debtor contends that the *Rooker-Feldman* doctrine[38] prohibits this court from exercising subject matter jurisdiction over the trustee's fraudulent conveyance claim against her father.  The debtor reasons that because the court previously ruled that the *Rooker-Feldman* doctrine barred it from revisiting the state court's rulings in Charles Raborn's lawsuit against the debtor, the same doctrine prevents the parties from settling the state court claim.[39]

*Rooker Feldman* does not apply because settlement does not revise or alter the state court's ruling: the doctrine does not bar the trustee from pursuing a settlement.

### II.    The Debtor's Father Has Capacity to Settle

The debtor also argues that her father lacks capacity to settle the trustee's lawsuit[40] although no evidence in the record contradicted the presumption of a person's capacity under Louisiana law.[41]  She further contended that instead of settling, the trustee should pay the

---

[37] At the outset of the hearing the trustee reserved the issue of the dividends so this memorandum opinion does not address the debtor's objection concerning that issue.

[38] The doctrine derives from *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed.2d 362 (1923).

[39] P-721, pp. 7-8, ¶¶5-7.

[40] Ms. Raborn repeatedly has alleged during the bankruptcy that her father is incompetent.  However, the debtor admitted at the hearing that Dr. Raborn has not been interdicted.

[41] Louisiana Civ. Code art. 27: "All natural persons enjoy general legal capacity to have rights and duties"; La. Civ. Code art. 28: "A natural person who has reached majority has capacity to make all sorts of juridical acts, unless otherwise provided by legislation"; La. Civ. Code art. 1918: "All persons have capacity to contract, except unemancipated minors, interdicts, and persons deprived of reason at the time of contracting"; La. Civ. Code art. 395: "A full interdict lacks capacity to make a juridical act.  A limited interdict lacks capacity to make a juridical act

$24,500 due Charles Raborn in order to undo the state court judgment in his favor. This last assertion is without merit. A state court of competent jurisdiction rendered a judgment in favor of Charles Raborn and against Susan Raborn. The trustee has no authority to unilaterally "undo" the state court action by simply paying Charles Raborn the purchase price of the stock at issue.

### III.    The Trustee's Expert was Qualified to Render Expert Opinion Evidence

The debtor also argued in court that the trustee's valuation was performed by a certified public accountant whose employment was not approved by the court pursuant to Local Rule 2014-1. The case record discredits that objection.

The trustee moved on November 10, 2016, to employ the firm of Postlethwaite & Netterville,[42] of which the trustee's expert witness—Jason MacMorran—is a shareholder. No party challenged the order authorizing the firm's employment.[43] The trustee at the evidentiary hearing qualified Jason MacMorran as an expert in the field of valuation. Mr. MacMorran testified about his extensive experience valuing closely held businesses and working on matters involving the health care industry. He was well-qualified to offer his expert opinion. The debtor's objection is plainly frivolous.

### IV.    Uncontradicted Expert Testimony Established the Value of the Pedicons Stock

The debtor next contends that the trustee did not take into account the value of the KidMed clinics in arriving at a value for the Pedicons stock. The evidence disproved her claim.

---

pertaining to the property or aspects of personal care that the judgment of limited interdiction places under the authority of his curator, except as provided in Article 1482 or in the judgment of limited interdiction."

[42]  Motion to Employ [P-666].

[43]  Order Approving Employment [P-668].

11

Experts representing the trustee and Settling Parties testified about the value of the Pedicons stock. Both maintained on cross-examination by the debtor that the KidMed clinics have no independent value. The trustee's witness explained that any value associated with the clinics is captured in the cash flows they generate, which he took into account in assigning a value to the Pedicons stock.[44] Ms. Claiborne, the Settling Parties' expert, testified that the clinics exist in name only and are basically "store fronts": they have no income, no expenses and no employees.

The debtor did not introduce any evidence to contradict the two experts. Her objection on this ground is overruled.

### V.     The Debtor's Objection about her Siblings' Administrative Claims is Moot.

The debtor argues that the administrative expense claims filed by her sisters and brother-in-law are invalid. The claims are being withdrawn as part of the settlement, which moots the objection.

### VI.    Even Absent Evidence of any Pedicons' Stock Transfer Restrictions, the Court Cannot Revisit the State Court's Judgment and the Settling Parties May Waive the Restrictions

The debtor argues, as she did in the state court litigation and many times in many filings in this court, that transfer restrictions in Pedicons' articles of incorporation prohibited the state court from awarding the stock to Charles Raborn.

The articles were not admitted into evidence at the hearing so the court need not address the specific transfer restrictions.

The state court's judgment against Susan Raborn forecloses this objection. The *Rooker-Feldman* doctrine "forecloses not only straightforward appeals but also more indirect attempts by

---

[44] Betsy Muller, President of Pedicons, testified that the clinics have not had Medicaid provider numbers since 2005, when their provider numbers were terminated and billing was shifted to Pedicons.

12

federal plaintiffs to undermine state court decisions."[45] The ability to transfer the Pedicons stock is *res judicata* by virtue of the state court's judgment in favor of Charles Raborn. Ms. Raborn cannot indirectly challenge that court's ruling through her objection to the compromise.

Even assuming, without finding, that the articles contained transfer restrictions applicable on the facts of the debtor's dispute with her father, the restrictions are inapplicable to the settlement because Betsy Muller and Karen Rogers, the only two other Pedicons shareholders who could assert the restriction, have agreed to the settlement. "A share transfer restriction may be waived by the corporation, shareholders or other persons. Waiver of a share transfer restriction may occur by … consenting to transfers."[46] With the agreement of the only two other shareholders, the trustee may relinquish claims to the estate's interest[47] in the 24.5% of Pedicons stock.

## VII. The Trustee Can Release All Claims of the Bankruptcy Estate against All Persons and Entities Against Whom the Estate May Have a Claim

Ms. Raborn's penultimate objection[48] contends that the settlement's proposed release is "untenable" because "only named parties to an adversary proceedings can be released and only

---

[45] Reasons for Order lifting stay to allow parties to pursue state court dissolution suit [P-224], p.5, note 7 citing *Lemonds v. St. Louis County*, 222 F.3d 488, 492 (8th Cir. 2000).

[46] 12 William Meade Fletcher, *Fletcher Cyclopedia of the Law of Corporations* § 5460.80 (2016). *See also Bartlett v. Fourton*, 115 La. 26, 31, 38 So. 882, 884 (1905) ("[I]n permitting the stock to be transferred to the persons acquiring it, the company necessarily waived any rights which it may have had to purchase it by preference.")

[47] Bankruptcy Code §541(c)(1) provides that with some exceptions inapplicable here, "[A]n interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law--(A) that restricts or conditions transfer of such interest by the debtor[.]" *See In re Houston Drywall, Inc.*, 2008 WL 2754526, at *34 (Bankr. S.D. Tex. July 10, 2008) ("The restrictions on transfer or assignment contained in the partnership agreement do not prevent the vesting of the debtor's contractual rights in the bankruptcy estate because § 541(c)(1)(A) 'invalidates restrictions on the transfer of property of the debtor in order that all of the interests of the debtor will become property of the estate,'" citing *Samson v. Prokopf (In re Smith),* 185 B.R. 285, 291–92 (Bankr.S.D.Ill.1995).)

[48] P-721, p.16, ¶11.

13

named parties for pre-petition causes of action listed in those disputes."[49] The debtor cites no authority to support the first part of this objection and the court has found none. The trustee may settle with and release prepetition claims against anyone against whom the estate may have a claim, as well as agents and representatives of those parties. Given the *pro se* lawyer debtor's propensity for litigation with her family members, her seeming indifference to cost and delay, and her willingness to cause her opponents to incur legal fees to address her claims, the Settling Parties prudently bargained for a broad release on behalf of the bankruptcy estate. No law prohibits that.

The debtor also protests that the settlement compromises future claims she may not know about with parties she may not know exist. This is without basis as well. The settlement agreement recites that the estate is releasing only claims that existed as of the petition date. The trustee's testimony on cross-examination by the debtor confirmed that he cannot compromise claims that did not exist as of the petition date.[50]

The debtor's objection on this ground is meritless.

### VIII.  The Trustee Reasonably Has Released the Estate's Claim to the House in which the Debtor Resides

The debtor's objection to the trustee's proposed release of the estate's claim to the house in which she resides is unclear, but her questions to the trustee on cross examination suggest that she objects to the settlement's disposing of any claim she may have to the house she resides in.

---

[49] *Id.*

[50]  Nothing within the four corners of the trustee's receipt and release evidences an intent to compromise any future action. The document plainly releases only claims belonging to the bankruptcy estate. "It is well-established that the broad scope of §541 encompasses causes of action existing at the time of the commencement of the bankruptcy action." *In re Carson,* 82 B.R. 847, 851 (Bankr. S. D. Ohio 1987). The release therefore encompasses all the estate's—and therefore the debtor's—prepetition claims, whether the debtor has asserted them or not in any forum or even realizes a claim may exist.

The trustee proposes to release all parties identified in the settlement document from all the debtor's prepetition claims and causes of action to, and defenses to ownership of, the house in which she lives.[51] Like so many other aspects of this case, some brief history is useful to make the situation clear.

Ms. Raborn's original Schedule A lists the house at 1323 Chippenham Drive in Baton Rouge as her property,[52] as did an amended schedule filed thirteen days later.[53] The debtor later again amended her schedules to show that both she and "another" had an interest in the house.[54] The trustee relied on the public record in deciding not to administer the house. Uncontradicted evidence established that the residence belongs to the Charles Raborn and Adrienne Raborn Revocable Living Trust, a revocable living trust that Charles and Adrienne Raborn established.[55]

The debtor has acknowledged that the public record reflects that the house belongs to the trust. However, she insists that the house is her property based on Louisiana Civil Code article 1839.[56]

Ms. Raborn's complaint concerning the trustee's release of the estate's claims to the house leaves her on the horns of a dilemma. If the house actually belonged to the debtor at the

---

[51] Motion and Memorandum to Approve Settlement of Fraudulent Conveyance Complaint [P-705], Exhibit A, p.2.

[52] P-42.

[53] September 22, 2015 Amended Schedules and Summary of Schedules [P-54].

[54] P-632.

[55] Exhibits Muller 1, Muller 2.

[56] Ms. Raborn claims that her father testified at some point in the state court proceeding that he intended the house to be her property. The debtor bases her claim to the house on that testimony and La. Civ. Code art. 1839: "A transfer of immovable property must be made by authentic act or by act under private signature. Nevertheless, an oral transfer is valid between the parties when the property has been actually delivered and the transferor recognizes the transfer when interrogated on oath. An instrument involving immovable property shall have effect against third persons only from the time it is filed for registry in the parish where the property is located." The debtor did not offer any evidence to support her contention.

commencement of her bankruptcy, Bankruptcy Code section 541 would render it property of the estate subject to the trustee's administration. Were those the facts, the trustee testified that he would sell the house, pay the debtor any homestead exemption to which she may be entitled, and use the balance of sales proceeds to pay Ms. Raborn's creditors.

The debtor persists in urging this objection but in the end it is not material to the court's analysis of the wisdom of the settlement. The trustee has concluded that the property does not belong to the bankruptcy estate so relinquishing any claim to it as part of the settlement is reasonable. The debtor's objection is meritless.

### D.  Counteroffer

The debtor's objection[57] concluded with a counterproposal for settlement[58] that she reiterated at the hearing. The debtor's proposal is not viable.

First, the debtor counters that instead of settling by relinquishing claims to the Pedicons stock, the escrowed Pedicons dividends could be used to pay Dr. Charles Raborn and reacquire the 24.5% interest in Pedicons despite the state trial court judgment. Ms. Raborn cites no law and does not explain how the trustee could accomplish that without prevailing in his fraudulent transfer lawsuit or on appeal of the state court's judgment. Either course is expensive and presents risks to the estate and creditors. Charles Raborn has been adjudicated the owner of the stock and has not made an offer to sell the stock back to his daughter; neither the debtor nor the trustee can compel him to relinquish claim to it without his consent or a final judgment in the trustee's favor in either this or the state appellate courts.

---

[57] P-721.

[58] No evidence established that the debtor had made any settlement offer to the trustee before filing her objection a week before the hearing.

16

Second, even if the trustee were able to recover the stock, the debtor would have him retain it and use dividends to pay claims and her daughter's medical school tuition.[59] No evidence supports a finding that dividends attributable to the 24.5% interest in Pedicons would yield sufficient dividend income for those ends. In fact, the evidence suggests that the dividends would not be sufficient for those purposes.

Finally, the proposal betrays a complete misapprehension of the bankruptcy process. Chapter 7 estates are not meant to linger for years curating property to pay creditors. "Chapter 7 of the Bankruptcy Code is titled 'Liquidation,' and the title fully expresses the purpose of the chapter's provisions. Chapter 7 provides the mechanism for taking control of the property of the debtor, selling it and distributing the proceeds to creditors in accordance with the distribution scheme of the Code. It is the basic recovery provided for by the Bankruptcy Code."[60]

Ms. Raborn's proposal, like the chapter 11 plan she proposed prior to conversion, promises no return for creditors who instead will bear all the risk, experience all the delay and suffer all the adverse consequences of litigation with the Settling Parties absent approval of the compromise.[61]

## CONCLUSION

To summarize, after years of litigation culminating in a loss of her stock in a family medical management company, the debtor filed chapter 11 in the hope of revisiting the state court's judgment. Nearly a year and a half after the bankruptcy commenced, the chapter 7 trustee has succeeded in negotiating at minimal cost a settlement that realizes most of the value the

---

[59] The debtor has pointed to no law supporting the use of bankruptcy estate funds to pay for her adult daughter's graduate education.

[60] 1-1 COLLIER ON BANKRUPTCY ¶1.07 (16th ed. 2016).

[61] A more extensive discussion of the debtor's proposed plan can be found in the court's Memorandum Opinion [P-427] regarding the sufficiency of the debtor's Combination Plan of Reorganization and Disclosure Statement.

debtor reasonably could have hoped to achieve had she prevailed in that state court litigation, while eliminating the risk of loss to the estate and creditors. The debtor cavils about a compromise that leaves the estate better off than the debtor left it when the court converted the case to a chapter 7 liquidation. Her objections are meritless: indeed, many are frivolous.

The trustee proved that the proposed compromise is fair and equitable and in the best interest of all the creditors. Even assuming the debtor had standing, she offered no evidence suggesting otherwise.

Baton Rouge, Louisiana, April 20, 2017.

**s/ Douglas D. Dodd**
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE